**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BENNETT,

    Plaintiff,

v.

BARNHART,

    Defendant.
                         /

No. C05-04666 MJJ

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND, AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Before the Court are Plaintiff's Motion for Summary Judgement or Remand (Docket No. 16), and Defendant's Cross Motion for Summary Judgment (Docket No. 18).

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion and **DENIES** Defendant's Cross-Motion.

**FACTUAL BACKGROUND**

On May 22, 2003, Plaintiff Dorothy M. Bennett ("Plaintiff") filed her current application for Social Security Income disability benefits ("SSI"). Plaintiff claimed in application that she became disabled on June 1, 1999, by swelling ankles, joint pain, bad stomach pain and headaches. (Certified Transcript ("Tr.") at 83-84.) This application was denied initially and upon reconsideration. (Tr. at 32-35, 37-40).[1]

On February 8, 2005, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").

---

[1] On February 17, 2000, Plaintiff also previously applied for SSI benefits. Plaintiff's application was denied at the administrative level, and Plaintiff did not seek judicial review. (Tr. at 72.)

1  (Tr. at 248-67.) Plaintiff's counsel and a vocational expert ("VE") were also present. (Tr. at 248.)
2  Plaintiff was questioned by the ALJ and her attorney. (Tr. at 250-261.) The documents admitted at
3  the hearing included an assessment form regarding Plaintiff's hepatitis signed by a physician's
4  assistant, P.A. Garner. (Tr. at 249). The ALJ noted this and requested that Plaintiff's counsel obtain
5  a copy of the assessment co-signed by the treating physician, if possible, indicating that he would
6  hold the record open until February 21, 2005 for that purpose. (Tr. at 249-250.) Plaintiff's counsel
7  received the co-signed form on February 10, 2005, but apparently did not deliver it to the ALJ until
8  February 22, 2005. (Docket No. 16 at 6.)

9  On April 28, 2005, the ALJ issued an unfavorable decision denying SSI benefits. (Tr. at 19-
10 28.) Plaintiff sought review from the Appeals Council, but the Appeals Council declined to disturb
11 the ALJ's decision. (Tr. at 4-8.) In so doing, the Appeals Council indicated that it had "received
12 additional evidence which it is making part of the record", including a copy of the assessment form
13 that had been edited and signed by the Plaintiff's treating physician. (Tr. at 5, 8, 237-245.) In its
14 written decision, the Appeals Council indicated that it had reviewed this additional form but that "a
15 review of the original evidence of record reveals that the report . . . was not signed by anyone except
16 [the physician's assistant]. It appears that the copy of this report submitted by the representative in
17 connection with the request for review has been altered." (Tr. at 5.) The Appeals Council indicated
18 that it therefore "found that this information does not provide a basis for changing the
19 Administrative Law Judge's decision." (Tr. at 5.)

20 On November 15, 2005, Plaintiff filed a request for judicial review pursuant to 42 U.S.C. §
21 405(g). (Docket No. 1.)

**LEGAL STANDARD**

23 Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories,
24 and admissions on file, together with the affidavits, if any, show that there is no genuine issue of
25 material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. of Civ.
26 Proc. 56(c).

27 Any individual may obtain judicial review of a final decision by the Commissioner of Social
28 Security. 42 U.S.C. § 405(g). The district court's scope of review is limited to the pleadings and

2

1 record. *Id.* The district court shall have the power to affirm, modify, or deny the Commissioner's
2 decision with or without remanding the case for rehearing. *Id.* However, the Commissioner's
3 decision must be affirmed if it is supported by substantial evidence and based on proper legal
4 standards. 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).
5 Substantial evidence is more than a scintilla but less than a preponderance, such that "a reasonable
6 mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039
7 (9th Cir. 1995). Where the evidence is susceptible to more than one interpretation, one of which
8 supports the ALJ's decision, the decision of the ALJ should be affirmed. *Magallanes v. Bowen*, 881
9 F.2d 747, 750 (9th Cir. 1989).

## ANALYSIS

### A.   Five-Step Sequential Evaluation For Disability.

In order to determine whether or not a claimant is disabled, an ALJ is required to apply a five-step sequential process. 20 C.F.R. § 416.920(a). Step one determines whether the claimant is currently involved in any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). If the claimant is, the claimant will not be considered disabled, regardless of medical findings. *Id.* Step two assesses whether the claimant has a severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). A claimant who does not have a severe impairment will not be considered disabled. *Id.* Step three determines whether a claimant who is not currently involved in any substantial gainful activity and has a severe impairment meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant is not working and suffers from a severe impairment that satisfies the duration requirement and meets or equals a listed impairment, the claimant will be considered disabled without considering vocational factors. *Id.* Step four determines whether the claimant is capable of doing past work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past work, the claimant will not be considered disabled. *Id.* If the claimant is not capable of doing past work, in, step five determines whether the claimant is capable of performing other work. 20 C.F.R. § 416.920(a)(4)(v). If, at any point in the process, the claimant is or is not found to be disabled, a determination is made and the analysis will cease. 20 C.F.R. § 416.920(a)(4).

As part of the determination process, the ALJ must consider all relevant evidence, including

3

medical opinions. 20 C.F.R. § 416.927(c). All medical opinions, regardless of source, will be evaluated. 20 C.F.R. § 416.927(d). However, medical opinions that opine as to the claimant's disability are not considered dispositive because this ultimate determination is reserved for the Commissioner. 20 C.F.R. § 416.927(e)(2).

If the evidence is consistent, and there is sufficient evidence on the record to make a determination, the Commissioner will do so. 20 C.F.R. § 416.927(c). If the evidence is inconsistent, the Commissioner will weigh all the evidence on the record to determine if the available evidence is sufficient to render a decision. *Id.* If it is not, the Commissioner must attempt to gather additional evidence; otherwise, the Commissioner will make a decision. *Id.*

In the instant case, the ALJ applied the five-step sequential process as outlined above and determined, in step five, that Plaintiff was not disabled. (Tr. at 19-28.)

### B. The Treating Physician's Opinion.

Plaintiff contends the ALJ failed to adequately consider or address the opinion of the treating physician, Dr. Sylvestre, and improperly discounted P.A. Garner's opinion regarding claimant's alleged disability. Accordingly, Plaintiff argues that the ALJ improperly gave controlling weight to Dr. Amit Rajguru, an examining but not treating physician, and that the Commissioner's decision should either be reversed or, at a minimum, remanded for further consideration of Dr. Sylvestre's report.

The Commissioner counters that the ALJ was not required to consider Dr. Sylvestre's opinion because Plaintiff's counsel did not provide it to the ALJ on time. Further, the Commissioner argues that the ALJ was not required to consider P.A. Garner's opinion as controlling because it was inconsistent, unsupported by medically acceptable clinical and laboratory diagnostic techniques, and constitutes a dispositive finding regarding claimant's disability claim.

"Because treating physicians are employed to cure and thus have greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "Therefore, an ALJ may not reject treating physicians' opinions unless he 'makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id. (*citing *Magallanes,*

4

1  881 F.2d at 751).  Moreover, opinions of the treating physician are generally given greater weight
2  than those of a non-treating physician.  *Id.*  The ALJ, however, is not bound by a treating source's
3  ultimate opinion of disability as this is a dispositive determination reserved for the ALJ.  20 C.F.R. §
4  416.927(e)(2).

5  It is undisputed that the ALJ's decision does not mention Dr. Sylvestre's report.  It appears
6  from the record that this is because Plaintiff's counsel did not provide Dr. Sylvestre's report, despite
7  having received it almost two weeks earlier, to the ALJ during the period in which he indicated he
8  would keep the record open for such a purpose.  (Tr. at 249-50; Docket No. 16 at 6.)   Nonetheless,
9  Dr. Sylvestre's report did subsequently get added to the record by the Appeals Council.  (Tr. at 8.)
10 Where the Appeals Council has denied review after considering new evidence submitted to it, the
11 district court reviewing the ALJ's decision will also consider the evidence newly submitted to the
12 Appeals Council.  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  This Court therefore
13 examines the conclusions reached by the ALJ and the Appeals Council in the light of Dr. Sylvestre's
14 report, together with the record as a whole.

15 This Court finds that the ALJ and the Appeals Council did not adequately set forth "specific,
16 legitimate" reasons for rejecting Dr. Sylvestre's report.  *See Smolen*, 80 F.3d at 1285.  After
17 receiving the report into the record, the Appeals Council does not appear to have recognized it as the
18 report of the treating physician – despite the ALJ's statement during the hearing requesting precisely
19 this document.  (Tr. at 249-50.)  Instead, the Appeals Council treated the report edited and signed by
20 Dr. Sylvestre as merely a document that had "been altered" from a document contained in the
21 original evidence of record, and found on that basis that the report "does not provide a basis for
22 changing the Administrative Law Judge's decision."  (Tr. at 5.)  The Court considers this discussion
23 of Dr. Sylvestre's report to be insufficient given the mandate that the Commissioner must set forth
24 "specific, legitimate" reasons for rejecting the opinion of a treating physician.[2]

---

[2] Citing 20 C.F.R. § 416.1540(b) (need for timely submission of records to allow efficient docket management) and 20 C. F. R. § 404.1740(b)(3)(ii) (representative's duty to act with reasonable diligence and promptness), the Commissioner argues that any failure to consider Dr. Sylvestre's report was not error because of Plaintiff's lack of diligence in submitting the report.  This argument is unavailing given that the Appeals Council subsequently accepted the report into the record, but did not adequately explain why it did not treat the report as an opinion provided by the treating physician.

5

The Commissioner argues that because Dr. Sylvestre's report was essentially an endorsement of P.A. Garner's report, the ALJ's rationale for affording P.A. Garner's report little weight should apply equally to Dr. Sylvestre's report – namely that it is inconsistent with other substantial evidence in the record.  More specifically, Defendant cites to findings that Plaintiff's claims of chest pain were inconsistent with tests for ischemia, that her blood pressure was controlled when she took her medication, that her liver function tests were normal, and that plaintiff suffered no mental or cognitive disturbances from her hepatitis.  (Docket No. 18 at 4:6-11.)  However, neither the ALJ nor the Appeals Council cited these reasons for discrediting P.A. Garner's report and accepting Dr. Rajguru's findings instead.  This Court cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision.  *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).  Moreover, the ALJ's report made clear that he gave "little weight" to P.A. Garner's report in part because she "is not an acceptable medical source." (Tr. at 25.)  In contrast, Dr. Sylvestre's opinion, as the treating physician, would presumably (in the absence of a specific and supportable finding to the contrary) be an acceptable medical source whose opinion is entitled to greater weight than that of P.A. Garner's, and greater weight than that of a non-treating physician such as Dr. Rajguru.  *Gomez v. Chater*, 74 F. 3d 967, 970-971 (9th Cir. 1996); *Smolen*, 80 F. 3d at 1285.

Moreover, some of the other reasons that the ALJ gave for discounting P.A. Garner's report likely would not apply with equal force to the report edited and signed by Dr. Sylvestre.  First, the ALJ noted that P.A. Garner's report stated that Plaintiff's liver was enlarged but there was no indicated referral to a gasteroenterologist.  (Tr. at 25.)  However, Plaintiffs' counsel represents that Dr. Sylvestre is apparently a gasteroenterologist and/or specialist in hepatitis.  (Docket No. 16 at 7:7.)  Though the record evidence does not establish this fact, to the extent Dr. Sylvestre's report creates an ambiguity as to whether Plaintiff was referred to the appropriate specialist for her alleged symptoms, the appropriate course of conduct would be to ALJ to obtain additional information.  *See* 20 C.F.R. § 404.1512(e)(1) (obligation to seek additional evidence or clarification from claimant's medical source when report contains a conflict or ambiguity).  This need to seek clarification is particularly applicable for the step five analysis to which this issue is connected, as the burden in

6

step five shifts to the Commissioner to show the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(v); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  Second, the ALJ found that although claimant alleged she suffered from depression, the treatment record did not mention specific depressive symptoms or limitations resulting from those symptoms.  (Tr. at 25.)  However, Dr. Sylvestre's edited report specifically differs from P.A. Garner's by enumerating the observance of "affective changes" and "disturbance in mood" (Tr. at 243.)

Accordingly, fundamental fairness dictates that this case be remanded for further consideration of Dr. Sylvestre's opinion as the treating physician.  *Cf. Nehlig v. Commissioner of Social Security Admin.*, 40 F. Supp. 2d 841, 849-50 (E.D.Tex. 1999) (where consulting physician completed medical source statement regarding plaintiff's function after hearing but based on pre-hearing examination, such evidence is material because it may have changed the outcome).  This is particularly true given that it appears to this Court that Dr. Sylvestre's opinions, if credited by the Commissioner, could have a significant impact on step five of the disability analysis.  In formulating Plaintiff's Residual Functional Capacity ("RFC"), an essential component to step five of the disability analysis, the ALJ adopted Dr. Rajguru's findings as to Plaintiff's physical abilities and limitations.  (Tr. at 25.)  However, Dr. Sylvestre's report contained very different findings as to Plaintiff's physical abilities.  Although not specifically so stating, the ALJ appears to have premised his finding that Plaintiff was not disabled on the VE's testimony that Plaintiff could do her relevant past work with the limitations Dr. Rajguru determined she had.  (Tr. at  25, 150, 263.)   In contrast, when the ALJ posed questions to the VE based on the limitations described in P.A. Garner's report (later endorsed with further edits by Dr. Sylvestre), the VE opined unequivocally that Plaintiff could <u>not</u> work at any jobs at all.  (Tr. at  263-264.)

The Court therefore **REMANDS** this action for further proceedings and will require the Commissioner to conduct a new evaluation of Dr. Sylvestre's report and its impact, if any, on the disability analysis.  To the extent that the Commissioner, on remand, determines that Dr. Sylvestre's findings should not be credited, he must state specific, legitimate findings based on substantial evidence in the record.  *Smolen*, 80 F. 3d at 1285.

**B.     The State Agency Evaluator**.

Plaintiff also contends that the ALJ failed to properly consider the findings of the non-examining, non-treating State Agency evaluator. (Docket No. 16 at 11.) The Record contains just one psychological evaluation by a State Agency evaluator, Dr. Michael. (TR 160-171.)[3] Plaintiff contends that because the ALJ did not specifically discuss what weight he afforded this evaluation, his decision is fatally flawed. However, the record reflects that the ALJ appropriately considered Dr. Michael's opinion.

The Court agrees with Defendant that Plaintiff has confused what roles the Psychiatric Review Technique Form (PRTF) (Exhibit B-6F; Tr. at 160-67) and Mental Residual Functional Capacity Assessment (MRFCA) (Exhibit B-7F; Tr. at 168-171) play in the ALJ's RFC assessment.[4] In step two of the disability analysis, Dr. Michael's Psychiatric Review Technique (PRT) assessment indicated that Plaintiff had borderline intellectual functioning. (Tr. at 161-167.) To assess the severity of this condition, Dr. Michael evaluated Plaintiff's functioning in the three specified areas. At this stage, Dr. Michael found that Plaintiff had moderate limitations in her ability to maintain concentration, persistence, and pace, and based on this finding the ALJ appropriately determined that Plaintiff's impairment was "severe." The ALJ then progressed to step three to determine whether Plaintiff's impairment met a listed mental disorder. Because it did not, the ALJ had to assess Plaintiff's Residual Functional Capacity ("RFC") to determine whether Plaintiff was capable of doing past work, or other work in steps four and five of the analysis. The ALJ properly used the

---

[3] Plaintiff apparently also contends that page 113 of the record contains the findings of "[a]nother non-examining, non-treating physician" that the ALJ purportedly failed to properly consider. However, this document appears to be a Breast and Cervical Cancer Control Program examination that bears no connection to the functional limitations at issue. Plaintiff advances no specific arguments as to how the ALJ committed error with respect to this document and the Court perceives none.

[4] At step two of the five-step disability analysis, the ALJ must determine the severity of the claimant's limitations. 20 C.F.R. § 416.920(c). Because Plaintiff has a mental impairment, the ALJ must apply a special analysis to determine whether additional evidence is needed and how the mental impairment affects the claimant's ability to work. 20 C.F.R. § 416.920a. Severity is assessed based on a five-point scale, ranging from none to extreme with respect to three functional areas (daily living; social functioning; concentration, persistence or pace). 20 C.F.R. § 416.920a(c). Episodes of decompensation are rated on a four-point scale. *Id.* If the three functional areas are found to be "none" or "mild" and episodes of decompensation are found to be "none," the claimant's mental impairment will be considered non-severe absent evidence that indicates otherwise. 20 C.F.R § 416.920a(d).

If a claimant's mental impairment is found to be severe, in step three the ALJ determines whether the impairment meets or equals a listed mental disorder. 20 C.F.R. § 416.920a(d)(2). If it does not, the ALJ moves onto step four of the five-step process. 20 C.F.R. § 416.920a(d)(3). The ALJ is required to document application of his technique in his decision. 20 C.F.R. § 416.920a(e).

1  results of the Mental Residual Functioning Capacity Assessment ("MRFCA") assessment completed
2  by Dr. Michaels in determining Plaintiff's RFC.  The MRFCA indicated that Plaintiff had no
3  limitations in 18 of 20 categories, and moderate limitations in her ability to understand and
4  remember detailed instructions, and carry out detailed instructions.  (Tr. at 168-171.)  As such, the
5  ALJ determined that Plaintiff could only perform simple, routine, repetitive tasks.  (Tr. at. 27.)

6  In sum, the record contains sufficient evidence that the ALJ appropriately considered Mr.
7  Michael's findings at the proper stages of the disability analysis.

### C. The Niece's Lay Witness Testimony.

Plaintiff also contends the ALJ failed to properly credit the statement given by the Plaintiff's niece, Ms. Johnson, in evaluating whether Plaintiff was disabled. (Tr. at 109-110.).  The Commissioner responds the ALJ did consider Ms. Johnson's statement but was not required to accept it because it was merely cumulative and not particularly probative.  The Commissioner also contends that the ALJ's reason for rejecting the credibility of this lay witness can be inferred.  Specifically, the Commissioner contends that Plaintiff's pain complaints (and derivatively Ms. Johnson's statement based on Plaintiff's reports) were not substantiated by the record.

The Social Security Rules require the ALJ to consider the entire record in determining the credibility of the claimant.  SSR 96-7p.  The ALJ's finding on credibility must be supported by evidence in the record.  *Id.*  However, the ALJ "does not need to 'discuss every piece of evidence.'" *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  Additionally, logical inferences may be drawn from the evidence.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ in fact noted Ms. Johnson's testimony.  (Tr. at 23-24.)  Ms. Johnson stated that Plaintiff has "good days and bad days," that she helps Plaintiff with cooking, cleaning and shopping, and that Plaintiff has trouble climbing the stairs at her apartment.  (Tr. at 109-110.)   The statement itself does not provide significant new information and is cumulative, and any failure by the ALJ to discuss it in detail is not fatal.  *See Howard*, 341 F.3d at 1012.  Moreover, the ALJ discussed contradictory evidence in the record and determined that Ms. Johnson's testimony was not credible because it was not supported by the record.  (Tr. at 23-24.)

9

There was sufficient and substantial evidence providing a basis for discounting Ms. Johnson's statement, and this Court therefore will not second-guess the ALJ's determination on this issue. *See Bayliss v. Barnhart*, 427 F. 3d 1211, 1218 (9th Cir. 2005) (ALJ may reject lay witness testimony if inconsistent with the record). However, the Commissioner should evaluate, on remand, whether further consideration of Dr. Sylvestre's opinions have any effect on the conclusions previously reached by the ALJ regarding Ms. Johnson's credibility.

### IV.     The Hypothetical Questions Posed to the Vocational Expert.

Plaintiff argues the ALJ improperly posed incomplete hypothetical scenarios to the Vocational Expert ("VE") during Plaintiff's hearing because he failed to explicitly include Plaintiff's "moderate" limitations in persistence, pace, and concentration. Plaintiff claims this constitutes reversible error. The Commissioner counters that the ALJ was not required to include Plaintiff's "moderate" limitations in the hypothetical questions because the "moderate" finding speaks to the level of severity determined in step two of the five-step process and not the ALJ's ultimate RFC assessment conducted in step four. Defendant also argues the ALJ's RFC assessment found Plaintiff limited to "simple, routine, repetitive tasks," which the ALJ incorporated into his hypothetical.

As discussed above, in evaluating whether Plaintiff's borderline intellectual functioning was "severe" at step two, Dr. Michael found that Plaintiff had moderate impairments in persistence, pace, and concentration. Because Plaintiff's impairments did not meet a listing at step three, the ALJ was required to determine Plaintiff's RFC. To this end, Dr. Michael completed the MRFCA and found in the category of sustained concentration and persistence that Plaintiff was only moderately impaired in one of eight subcategories – the ability to carry out detailed instructions. In posing questions to the VE, the ALJ incorporated this limitation into his hypothetical by stating that Plaintiff was, "limited to simple, repetitive tasks involving low stress types of activities, simple, routine, repetitive types of tasks." (Tr. at 263.) This hypothetical assumption is supported by substantial evidence in the record. A September 13, 2003 psychological evaluation by Dr. Campagna indicated that:

> . . . the claimant's ability to function in a work-related setting is not impaired. The claimant's reasoning capacities are adequate for simple tasks. Attention and concentration are adequate for simple tasks.

10

> Based on the current evaluation, the claimant is able to learn simple, repetitive tasks. The claimant would be able to follow simple two and three-part instructions. The claimant would be able to sustain independent activity.

(Tr. at 158.) Because the hypothetical was based on assumptions supported by substantial evidence in the record, the ALJ did not error in not explicitly incorporating the step two finding. *See Osenbrock v. Apfel*, 240 F. 3d 1157, 1163 (9th Cir. 2001) (Commissioner can meet burden at step five by obtaining VE testimony using hypothetical assumptions based on substantial evidence in the record).

The Court finds no independent source of error in the hypothetical questions asked of the VE. However, to the extent that the Commissioner credits Dr. Sylvestre's opinions and findings after further proceedings on remand, the Commissioner is specifically **DIRECTED** to evaluate whether the VE's response already in the record to the hypothetical question based on the contents of P.A. Garner's report – which indicated that the Plaintiff could not perform any work if subject to the functional limitations described in that report – require a different outcome in step five of the disability analysis. (Tr. at 262-63) ("Q...Could a person with those limitations do the past work you've identified?  A.  No, sir.  Q.  Any jobs at all?  A.  No, sir.").[5]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion by **REMANDING** this matter for further consideration by the Commissioner as set forth in Parts A and D above. The Court **DENIES** Defendant's Cross-Motion.

**IT IS SO ORDERED.**

Dated:   5/2/2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

---

[5] In her Reply, Plaintiff argues that Grid Rule 201.09 required a finding of "disabled" based on Plaintiff's exertional and nonexertional impairments, and cites *Cooper v. Sullivan*, 880 F. 2d 1152 (9th Cir. 1989) in support of this proposition. Rule 201.09, however, applies only where a claimant's RFC is determined to be "Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairments." 20 C.F.R. Part 404, Subpart P, Appendix 2. Here, the ALJ determined that Plaintiff's maximum sustained work capability was limited to medium work. (Tr. at 26.) As such, it does not appear that Rule 201.9 would apply, and Plaintiff offers no explanation establishing that it would..